UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA AND THE STATE OF INDIANA *ex rel.* TOM HERRON AND MELANIE ANDERSON,          *Plaintiffs-Relators*, <br><br> vs. <br><br> INDIANAPOLIS NEUROSURGICAL GROUP, INC., *et al.*,          *Defendants*. | 1:06-cv-1778-JMS-DML |

**ORDER**

Plaintiffs/Relators bring this lawsuit under the *qui tam* provisions of the federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729, 3730, and its nearly identical state counterpart, the Indiana False Claims Act ("Indiana FCA"), Ind. Code §§ 5-11-5.5-2, 5.5-8.[1]  Presently pending before the Court are: (1) a Motion to Dismiss for Failure to Specifically Plead Under the False Claims Act, filed by Defendants Rick Sasso, M.D. and Kenneth Renkens, M.D., [dkt. 148]; (2) a Motion to Dismiss Plaintiffs' Second Amended Complaint, filed by Defendants Indianapolis Neurosurgical Group, Inc. ("ING"), Michael Burt, M.D., Daniel Cooper, M.D., Andrew DeNardo, M.D., Henry Feuer, M.D., Peter Gianaris, M.D., Terry Horner, M.D., Steven James, M.D., Saad Khairi, M.D., Thomas Leipzig, M.D., Jean-Pierre Mobasser, M.D., Troy Payner, M.D., Eric Potts, M.D., Carl Sartorius, M.D., John Scott, M.D., Michael Turner, M.D., Derron Wilson, M.D., and Ronald Young II, M.D., [dkt. 149]; and (3) a Motion to Dismiss Plaintiffs' Second Amended Complaint, filed by David Hall, M.D., [dkt. 152].  Briefing on all of the motions was complete on December 31, 2012.  For the following reasons, the Court denies

---

[1] Both the United States and the State of Indiana have declined to intervene in this action.  [Dkts. 63; 92.]

1

Defendants' motions in part and grants them in part.

# I.
## THE SECOND AMENDED COMPLAINT

Relators Tom Herron and Melanie Anderson (collectively, "the Relators") filed their Second Amended Complaint, [dkt. 136], on August 23, 2012, after ING moved to dismiss the Amended Complaint, [dkt. 107]. The Court summarizes the allegations in the Second Amended Complaint as follows:

ING is "a nationally recognized neurosurgical practice" located in Indianapolis, Indiana. [Dkt. 136 at 6, ¶ 16.] Drs. Burt, Cooper, Denardo, Feuer, Gianaris, Hall, Horner, James, Khairi, Leipzig, Mobasser, Payner, Potts, Renkens, Sartorius, Sasso, Scott, Turner, Wilson, and Young (collectively, "the Individual Defendants") have all practiced medicine at ING at various times. [*Id.* at 6, ¶ 17.]

Relator Herron is a medical coding expert "with over 30 years of clinical health care experience and over 15 years of experience in health information management coding." [*Id.* at 5, ¶ 13.] He worked as a Senior Coding Specialist for ING for seven and a half years. [*Id.*] Relator Anderson is also a medical coding expert, "with over 25 years of experience in the medical field and more than 15 years of coding experience." [*Id.* at 5, ¶ 14.] She worked as a Senior Coding Specialist for ING from 2001 through 2006. [*Id.*] The Relators "were principally responsible for reviewing, confirming, and posting all claims submitted by ING for reimbursement, including those claims presented to" Medicare, Medicaid, and other government insurers. [*Id.* at 5-6, ¶ 15.]

The Relators allege that Defendants engaged in the following three types of fraud:

- For Evaluation and Management Services, which include "physician/patient encounters for assessment, counseling, and other services provided to a patient and reported through CPT codes," [*id.* at 14, ¶ 44], all of the Individual

>Defendants: (1) "deliberately billed E&M visits at higher intensity levels than justified based on the actual visit," thereby "boost[ing] reimbursements from the Government Insurers by 50% or more," [*id.* at 17, ¶¶ 57-58]; and (2) billed using higher reimbursed visit types, [*id.* at 21, ¶¶ 64-81] ("<u>the E&M Services Scheme</u>");

- For Non-Physician Services, all of the Individual Defendants "routinely billed as 'incident to' for services where the physician did not participate at all (*i.e.*, the non-physician did not merely assist in the procedure), and where there was no ING doctor present to provide direct personal supervision[; r]ather, the non-physician performed the entire procedure without a supervising physician's involvement," [*id.* at 27, ¶ 89] ("<u>the Incident To Billing Scheme</u>"); and

- For certain specific procedures, the Individual Defendants billed for procedures they did not perform "in lieu of the less lucrative procedures that they actually performed," including: (1) the transcatheter permanent occlusion or embolization procedure; (2) the stereotactic radiosurgery procedure; (3) Baclofen pump installation; (4) the ventricular catheter procedure; and (5) the shunt tubing procedure, [*id.* at 30-36, ¶¶ 102-138] ("<u>the Procedures Scheme</u>").

The Relators assert claims for: (1) violation of the FCA for presenting false claims under 31 U.S.C. § 3729(a)(1), [*id.* at 38-39, ¶¶ 150-152]; (2) violation of the FCA for making or using a false record or statement under 31 U.S.C. § 3729(a)(2), [*id.* at 39, ¶¶ 153-155]; (3) violation of the FCA for using a false record to avoid an obligation to refund under 31 U.S.C. § 3729(a)(7), [*id.* at 39, ¶¶ 156-158]; (4) violation of the Indiana FCA for presentation of false claims under Ind. Code § 5-11-5.5-2(1), [*id.* at 40, ¶¶ 159-161]; (5) violation of the Indiana FCA for making or using a false record or statement under Ind. Code § 5-11-5.5-2(2), [*id.* at 40, ¶¶ 162-164]; (6) violation of the Indiana FCA for using a false record to avoid an obligation to refund under Ind. Code § 5-11-5.5-2(6), [*id.* at 40-41, ¶¶ 165-167]; (7) violation of the FCA for retaliation under 31 U.S.C. § 3730(h), [*id.* at 41, ¶¶ 168-170]; and (8) violation of the Indiana FCA for retaliation under Ind. Code § 5-11-5.5-8, [*id.* at 41-42, ¶¶ 171-173].

## II.
### PLEADING REQUIREMENTS IN *QUI TAM* ACTIONS

The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007)).  In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff.  *Active Disposal Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011).  A motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. 544).  The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief.  *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011) (citing *Iqbal*, 129 S.Ct. at 1951).  Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level."  *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012).  This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* (citing *Iqbal*, 129 S.Ct. at 1950).

The FCA and the Indiana FCA are anti-fraud statutes; therefore, the Relators' claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *See United States ex rel. Gross v. Aids Research Alliance-Chicago*, 415 F.3d 601, 604 (7th Cir. 2005).  Rule 9(b) states:

> (b) Fraud or Mistake; Condition of Mind.  In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

To plead fraud with particularity, a relator must allege "the who, what, when, where, and

4

how: the first paragraph of any newspaper story." *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 376 (7th Cir. 2003) (citation omitted) (addressing sufficiency of allegations in *qui tam* action); *United States ex rel. Gross*, 415 F.3d at 605 (same).

### III.
#### DISCUSSION

####   A.  Failure to Plead With Sufficient Particularity

Defendants' primary argument is that the Relators failed to plead the claims against them with sufficient particularity – both by "improperly 'lump[ing]' the Individual Defendants together as one homogeneous unit," [dkts. 150 at 15-16; 151 at 4-5], and by simply not providing enough detail regarding the three fraud schemes to satisfy Fed. R. Civ. P. 9(b)'s heightened pleading requirements, [dkts. 150 at 12-15; 151 at 10-13, 17-25].[2] The Relators respond that they have satisfied Rule 9(b) by "set[ting] forth each of the fraudulent schemes in detail." [Dkt. 155 at 15.] Specifically, they argue that their allegations relating to the E&M Services Scheme and the Incident To Billing Scheme are adequate to allege claims against all of the Defendants – even though they only provide specific examples for certain Individual Defendants – because they allege that "the scheme was widespread across the entire practice, so a greater number of individual defendants are therefore named." [*Id.* at 17.] Further, they claim that they adequately allege claims against certain Individual Defendants in connection with the Procedures Scheme because they have specifically identified the doctors that engaged in that practice. [*Id.* at 17-18.] Finally, the Relators assert that they have adequately alleged claims against ING because it "can

---

[2] Drs. Sasso and Renkens make the additional argument that the Relators have not adequately alleged claims against them because all of the specific examples they cite of allegedly fraudulent billing took place after their departure from ING. [Dkt. 151 at 3-7.] The Relators have asserted that the allegedly fraudulent schemes were ongoing and widespread, and have specifically alleged that Drs. Sasso and Renkens received binders containing the 2002 audit results. [*See, e.g.*, dkt. 136 at 4, ¶ 10 and 37, ¶ 142.] These allegations are sufficient to state claims against Drs. Sasso and Renkens at this stage of the litigation.

be liable through the actions of its principals and high-level managers; and the allegations against all of the Individual Defendant Doctors and ING management, taken together, are more than enough to establish ING's involvement." [*Id.* at 15-16.]

While Rule 9(b) requires the plaintiff to set forth the "who, what, when, where, and how" of the alleged fraud, *United States ex rel. Gross*, 415 F.3d at 605, the Relators need not provide a specific example for each Individual Defendant named. *Cf. United States ex rel. Crews Ill. v. NCS Healthcare of Ill. Inc.*, 460 F.3d 853, 856 (7th Cir. 2006) (at summary judgment stage, relator must provide at least one false claim that was actually submitted). This case is at the pleadings stage, not summary judgment, and the Court will not conflate the proof requirements on summary judgment with the requirements at the pleadings stage of a *qui tam* action. *United States ex rel. Gross*, 415 F.3d at 604 (distinguishing between summary judgment requirements and pleadings requirements in a *qui tam* action).

Instead, the Relators' allegations regarding the Individual Defendants' participation in the three schemes, coupled with numerous specific examples of how those schemes were carried out, are sufficient to satisfy Rule 9(b)'s pleading requirements. For example, in connection with the first two alleged schemes – the E&M Services Scheme and the Incident To Billing Scheme – the Relators allege that all of the Individual Defendants participated in the schemes, but only cite specific examples involving certain Individual Defendants. Specifically:

- For the E&M Services Scheme, the Relators allege that "Defendants, including every Individual Defendant Doctor, deliberately billed E&M visits at higher intensity levels than justified based on the actual visit," and provide specific examples involving Drs. Turner, Mobasser, Connolly, Wilson, and James, [dkt. 136 at 17-21, ¶¶ 57-63]. The Relators further allege that "Defendants also coded E&M services using the CPT codes for the wrong, but more highly reimbursed, visit types," and provide specific examples for Drs. Goodman, Sartorius, Mobasser, Wilson, and Turner, [*id.* at 21-25, ¶¶ 64-81].

- For the Incident To Billing Scheme, the Relators allege that "Defendants, including but not limited to every Individual Defendant Doctor, filed false claims for payment by knowingly and systematically billing for services or treatment performed by non-physicians, utilizing the physician's provider number despite the fact that the non-physician rendered the service and the circumstances did not justify 'incident to' billing under Medicare and Medicaid reimbursement regulations," [*id.* at 25, ¶ 82]. They provide specific examples for Drs. Turner, Leipzig, Mobasser, and Wilson, [*id.* at 28-29, ¶¶ 96-101].

Despite not providing a specific example for every single Individual Defendant, the Court finds that the Relators have satisfied the pleading requirements of Rule 9(b).[3] They allege widespread schemes among the Defendants, and provide detailed allegations of numerous examples for each scheme.[4] The Relators need not provide a specific example of each type of fraud for each defendant – the allegations here are enough to put all of the Defendants on notice of what they need to defend against.[5] *See, e.g., United States ex rel. Leveski v. ITT Educ. Servs.*,

---

[3] Certain Defendants also argue, almost as a side note, that the Relators' allegations in connection with two parts of the Procedures Scheme – the ventricular catheter procedure and the shunt tubing procedure – are inadequate because the Relators only allege that the Individual Defendants did not maintain documentation regarding the procedures that they performed, and not that they did not actually perform the procedures. [Dkt. 150 at 24.] The Court finds that those claims are adequately alleged against certain Individual Defendants, as discussed below, because the allegations in connection with these specific procedures, taken together with the allegations in the remainder of the Second Amended Complaint, sufficiently allege improper conduct.

[4] The Court rejects Defendants' argument that the Relators do not have the requisite personal knowledge to plead their claims with particularity because they "were not in the examination room with the physicians and their patients…." [Dkt. 150 at 18.] If presence in the examination room was required, then a *qui tam* action could never be brought in this context by anyone other than a doctor or nurse involved in the actual examination. Plaintiffs are not required to have personal knowledge of the facts alleged in a complaint, though their allegations must be both supported in law and fact. *See* Fed. R. Civ. P. 11(b)(2), (3).

[5] The cases relied upon by Defendants did not involve situations like the one at hand, where the Relators have provided specific examples of each type of fraud, and do not stand for the proposition that "[i]f a relator is seeking liability for multiple fraudulent practices, the relator must provide at least one specific example of fraud for each claim and for each defendant," [dkt. 158 at 7]. *See, e.g., United States ex rel. Coots*, 2012 U.S. Dist. LEXIS 128264, *6-7 (S.D. Ind. 2012) (certain *qui tam* claims dismissed for failure to satisfy Rule 9(b), in part because "the fact

2010 U.S. Dist. LEXIS 137909, *10 (S.D. Ind. 2010) ("[t]he purpose of Rule 9(b) is 'to ensure that the party accused of fraud, a matter implying some degree of moral turpitude and often involving a 'wide variety of potential conduct,' is given adequate notice of the specific activity that the plaintiff claims constituted the fraud so that the accused party may file an effective responsive pleading.'… [The] Second Amended Complaint sets out the alleged fraud in a manner that allows ITT to identify the conduct and respond").[6]

The Court recognizes that the Relators attempted to provide much needed clarity and, in some instances limits, as to their claims in their response brief as follows:

> So there is no confusion, Relators' claims against each Individual Defendant Doctor are as follows:
>
> 1. *E&M Services*:…all Individual Defendant Doctors….
> 2. *"Incident To" Billing*:…all Individual Defendant Doctors….
> 3. *Specific Procedures*
>    a. *Transcathe[te]r Permanent Occlusion*: Drs. Denardo and Scott.
>    b. *Stereotactic Radiosurgery Procedure*: Drs. Cooper, Hall, Horner, Leipzig, Mobasser, Payner, Potts, and Sartorius.
>    c. *Baclofen Pump Installation*: Dr. Turner.

---

that Plaintiff has set forth specific examples of Defendant's invoices in order to detail the six other allegedly fraudulent billing practices, does not excuse the requirement that it do the same to support its allegations that the Defendants knowingly submitted bills that had inaccurate service location coding"); *Vicom, Inc. v. Harbridge Merchant Servs.*, 20 F.3d 771, 777-78 (7th Cir. 1993) (complaint alleging RICO claims failed to satisfy Rule 9(b) where "[m]any of the allegations simply state that the misrepresentations were made 'at the direction, under the supervision, or with the knowledge and consent' of all the defendants"). Here, the Relators have set forth specific examples for each allegedly fraudulent scheme. They need not set forth a specific example involving each Individual Defendant, especially in light of their allegations that participation in the schemes was widespread.

[6] The Court's finding that the Relators have adequately alleged their claims under Rule 9(b) applies equally to allegations against ING. Respondeat superior concepts have been applied in the FCA context, and the Court will not dismiss claims against ING at this stage in the litigation. *See, e.g., United States v. Dolphin Mortg. Corp.*, 2009 U.S. Dist. LEXIS 4295, *36 (N.D. Ill. 2009) (denying employer's motion for summary judgment on FCA claims, and noting that the Seventh Circuit Court of Appeals relies upon the Restatement of Agency "as a valuable source for…general agency principles," including an employer's vicarious liability for its employee's conduct).

> d. *Ventricular Catheter Procedure*: Drs. Burt, Gianaris, Hall, Horner, James, Khairi, Leipzig, Mobasser, Payner, Potts, Sartorius, Turner, and Young.
> e. *Shunt Tubing Procedure*: Drs. Horner, Khairi, Leipzig, Payner, Potts, Sartorius, Turner, and Young.

[Dkt. 155 at 16-17.]

Despite the Court's finding that the Relators have met Rule 9(b)'s pleading requirements, it finds that the Second Amended Complaint, as drafted, is far less cogent than the Relators' characterization of their claims in their response brief. The Court also notes that the Second Amended Complaint at times reads more like a press release than a complaint, and contains legal argument, rhetoric, and superfluous information.[7] *See* Fed. R. Civ. P. 8(d)(1) ("Each allegation must be simple, concise, and direct"). Accordingly, going forward, the Court limits the Relators' claims to their characterization in their response brief at pages 12-13, [dkt. 155 at 16-17].[8]

The Relators should be mindful that "the mere filing of a civil lawsuit can have significant effects on a defendant, [and] [t]he public charges made in a civil lawsuit can cast a shadow over a defendant's reputation until the case is resolved." *Doe v. Indiana Black Expo*, 923 F.Supp. 137, 141 (S.D. Ind. 1996). Being named as a defendant in a lawsuit is a serious matter, and the Relators should take extra care to ensure they are only pursuing claims against the Individual Defendants against whom they can adequately allege and prove claims.

---

[7] The Court notes that the Second Amended Complaint contains examples of allegedly fraudulent billing by Drs. Goodman and Connolly – both of whom are not named as defendants. [*See, e.g.*, dkt. 136 at 20, ¶ 63 and 23, ¶ 71.]

[8] For example, while the Second Amended Complaint alleges that "Defendants also routinely billed for a shunt tubing procedure without maintaining supporting documentation of performing the procedure," [dkt. 136 at 35, ¶ 134], the Relators limit their claims relating to the shunt tubing procedure to Drs. Horner, Khairi, Leipzig, Payner, Potts, Sartorius, Turner, and Young in their response, [dkt. 155 at 17]. Accordingly, the Court finds that the Relators only assert claims relating to the shunt tubing procedure against Drs. Horner, Khairi, Leipzig, Payner, Potts, Sartorius, Turner, and Young.

Additionally, the Relators should not assume that "naturally" certain claims are not asserted against certain Individual Defendants when those claims are not set forth clearly. [*See* Dkt. 155 at 6 ("And naturally, because the fraudulent billing of Doctors Sasso and Renkens pre-date the enactment of the Indiana FCA, Relators' only claims against them are under the federal FCA, and do not include Relator Herron's retaliation claim").]

Consistent with clarified and limited claims outlined in their response brief, Relators are ORDERED to prepare a Claim Table as part of the Case Management Plan. The Claim Table shall be organized by each alleged scheme, with the Procedures Scheme separated into five parts (one for each procedure), and shall indicate which statutes the Relators allege each scheme violates, and which specific Defendants are implicated for each. The Claim Table shall serve as a benchmark for future discovery, motion practice, and potentially jury instructions. The Court's quest for clarity should NOT be read by the Relators as a license to add claims or to accuse any Individual Defendant of any practice not specified in the above quote from the Relators' response brief.

### B. Indiana FCA Claims for Activities Occurring Before 2005

Defendants argue that the Relators cannot assert claims for violation of the Indiana FCA relating to activities which occurred before 2005, when the Indiana FCA was enacted. [Dkts. 150 at 28; 151 at 13-14.] As to the Indiana FCA claims against Drs. Sasso and Renkens, the Relators concede that "because the fraudulent billing of Drs. Sasso and Renkens pre-date the enactment of the Indiana FCA, Relators readily admit that their only claims against them are under the federal [FCA]." [Dkt. 155 at 29.] Accordingly, the Court finds that dismissal of the Indiana FCA claims against Drs. Sasso and Renkens is appropriate.

As to the Indiana FCA claims against the remaining Defendants, because the Court has

already found that the Relators have pled their claims with the specificity required by Rule 9(b), it also finds that – at the motion to dismiss stage – the Relators have sufficiently pled Indiana FCA claims despite the fact that some of the examples of misconduct they cite to occurred prior to the Indiana FCA's enactment in 2005. Indeed, they also cite examples from after 2005, and generally allege a continuing course of conduct. [*See, e.g.*, dkt. 136 at 20, ¶ 63 (Dr. Turner "[b]illed using CPT codes 99214, a level 4 established patient visit, on…5/17/06, and 9/26/06" and Dr. Wilson "[b]illed using CTP code 99213, a level 3 established patient visit, on 9/26/06"), 29, ¶ 100 (Dr. Turner engaged in improper incident to billing relating to a Baclofen pump on 6/7/06), 33, ¶ 124 (ING improperly billed for the stereotactic frame procedure from 2004 through September 2006), and 36, ¶ 137 (Dr. Turner improperly billed for a shunt tubing procedure on 9/12/06).] As discussed above, the Relators need not allege every instance of improper billing, and need not list specific examples for each Defendant. The numerous examples the Relators provide, combined with their allegations of a widespread and continuing scheme, are enough to allege Indiana FCA claims against all of the Defendants – except Drs. Sasso and Renkens, against whom the Relators have abandoned their Indiana FCA claims.

The Court notes, however, that the Indiana FCA does not contain a retroactivity provision, nor does it appear to apply retroactively. *United States ex rel. McCoy v. Madison Ctr.*, 2011 U.S. Dist. LEXIS 49917, *8 (N.D. Ind. 2011). Accordingly, to succeed on the merits, the Relators will need to present specific evidence of Indiana FCA violations which occurred after 2005, when the Indiana FCA was enacted. To the extent the Second Amended Complaint could be read to plead any claim under the Indiana FCA prior to its enactment date, such claims are dismissed. The Relators must observe the enactment date of the Indiana FCA in connection with those claims, and should be especially mindful of that date in light of Fed. R. Civ. P. 11 and 28

U.S.C. § 1927.

### C. Statute of Limitations

Defendants argue that the Relators are barred from recovering for claims submitted before December 14, 2000 – six years before the Relators filed their original Complaint – based on the FCA's and the Indiana FCA's statutes of limitation. [Dkt. 150 at 27-28.] A motion to dismiss based on the statute of limitations may be granted when "the relevant dates are set forth unambiguously in the complaint." *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009). The Court has already dismissed the Relators' Indiana FCA claims to the extent they relate to claims submitted prior to that statute's enactment in 2005, so those claims, as limited, will comply with the statute of limitations. To the extent the Second Amended Complaint could be read to plead any claims under the FCA relating to claims submitted before December 14, 2000, such claims are dismissed. However, FCA claims (as previously clarified and limited) relating to claims submitted after that date stand.

### D. Relator Herron's Retaliation Claim

Drs. Sasso and Renkens argue that Relator Herron's retaliation claim against them should be dismissed because "[n]either…practiced at ING close to the time [Relator] Herron was fired." [Dkt. 151 at 14.] The remaining Defendants argue that Relator Herron fails to plead the required elements for a retaliation claim under the FCA or the Indiana FCA because he does not allege that ING or any of the Individual Defendants "actually knew that he was preparing for a *qui tam* action." [Dkt. 150 at 26.] Relator Herron responds that he was engaged in protected activity, but does not specifically address whether he adequately alleged that Defendants received the proper level of notice of his actions. [Dkt. 155 at 28.]

First, the Court dismisses Relator Herron's retaliation claims against Drs. Sasso and

Renkens because Relator Herron stated in his response that "because Drs. Sasso and Renkens left ING before Relator Herron was fired, [Relator Herron] does not allege retaliation claims against them." [*Id.* at 29.]

Second, as to the remaining Defendants, the Court finds that Relator Herron has not adequately stated retaliation claims under the FCA or the Indiana FCA.[9] In order to state a claim for retaliatory discharge under § 3730(h), Relator Herron must allege: (1) that he acted in furtherance of a FCA enforcement action: (2) that the defendants knew he was engaged in this protected conduct; and (3) that the defendants were motivated, at least in part, to terminate him because of the protected conduct. *See Brandon v. Anesthesia & Pain Mgmt. Assocs.*, 277 F.3d 936, 944 (7th Cir. 2002). Defendants focus on the second element, arguing that Relator Herron has not alleged that they knew he was preparing for a *qui tam* action.

The FCA's anti-retaliation provision "protects employees supplying information that could prompt an investigation or conducting their own internal investigation even where an action is never filed, at least so long as the employee does not make deliberately false or baseless accusations of fraud." *Abner v. Jewish Hosp. Health Care Servs.*, 2008 U.S. Dist. LEXIS 61985, *27 (S.D. Ind. 2008). In determining whether an employee's actions are protected under § 3730, a court will consider whether: "'(1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is committing fraud against the government.'" *Fanslow v. Chi. Mfg. Ctr., Inc.*, 384 F.3d 469, 480 (7th Cir. 2004) (*quoting Moore v. Cal. Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 845 (9th Cir. 2002)).

---

[9] Because the Indiana FCA "mirrors the Federal FCA in all material respects," *Kuhn v. LaPorte County Comprehensive Mental Health Council*, 2008 U.S. Dist. LEXIS 68737, *8 (N.D. Ind. 2008), the Court's discussion of the FCA retaliation claim applies with equal force to Relator Herron's Indiana FCA retaliation claim.

13

Here, Relator Herron alleges sufficient facts to show that he believed ING and the Individual Defendants were engaging in improper and illegal billing practices, *and* that Defendants were aware he believed this. For example, he alleges that he "advised Defendants on multiple occasions [of certain details of the Procedures Scheme…and] that such violations resulted in an overcharge to the Government Insurers, which Defendants were obligated to refund under Medicare and Medicaid regulations." [Dkt. 136 at 31, ¶¶ 113-114.] Relator Herron further alleges that he "informed Defendants that the schemes detailed above violated Medicare and Medicaid reimbursement rules…[and] both Relators Herron and Anderson personally warned Defendants through face-to-face interactions, written memorandums and 'Coding Updates.'" [*Id.* at 36, ¶ 139.] Relator Herron alleges that less than a year before he was fired, a letter was placed in his personnel file "instructing him to stop communicating information to the ING physicians about improper billing." [*Id.* at 37, ¶ 145.] Relator Herron asserts that "[b]ecause of his lawful acts to stop Defendants from defrauding the government as alleged herein, Defendants retaliated against Relator Herron in the terms and conditions of his employment by firing him." [*Id.* at 41, ¶ 169.] He alleges that his lawful acts included "objecting to fraudulent acts and omissions" by Defendants. [*Id.* at 41, ¶ 172.]

While Relator Herron may have sufficiently alleged that the Defendants knew he did not agree with their billing practices and believed they were improper and illegal, he must go a step further. Because of his position at ING, in order to sustain a retaliation claim under the FCA or the Indiana FCA, Relator Herron must also show that the Defendants were aware he was pursuing a *qui tam* action, or that he had reported the Defendants' conduct to the government.

The Seventh Circuit Court of Appeals has instructed that the scope of notice a relator must supply to his employer in order to sustain a retaliation claim depends upon whether the

14

employee is "charged with discovering fraud in the normal course of their job duties." *Fanslow*, 384 F.3d at 483.  If so, an employee must establish that his employer was aware his actions were in furtherance of a *qui tam* action. *See Brandon*, 277 F.3d at 944-45 (FCA does not protect employees who simply "raise their concerns privately within their firm or company, rather than publicly," and telling an employer that actions do not comply with Medicare billing regulations is not enough to invoke FCA's protection – an employer must be on notice that the employee believes the employer is violating FCA and is acting in furtherance of *qui tam* action). Specifically, "[e]mployees charged with discovering fraud in the normal course of their job duties are obligated to a heightened notice requirement, necessitating that the employee indicate an explicit intention to bring a *qui tam* action or otherwise report the fraudulent conduct to the government." *Kuhn*, 2008 U.S. Dist. LEXIS 68737 at *13.

Relator Herron alleges that his job responsibilities included "reviewing, confirming, and posting all claims submitted by ING for reimbursement," [dkt. 136 at 5, ¶ 15], participating in Billing Committee meetings where he had "an opportunity…to raise general and specific billing concerns," [*id.* at 11, ¶ 35], and conducting "comprehensive audits" of the doctors' billing, [*id.* at 12-13, ¶ 39].  Based on his own characterization of his position at ING, Relator Herron would be considered a "fraud-alert" employee subject to the heightened notice requirement outlined in *Fanslow*.  *See also Kuhn*, 2008 U.S. Dist. LEXIS 68737 at *14-15 (employee who "was explicitly hired for the purpose of conducting an internal audit of [the employer's] records" was held to heightened notice requirement in order to invoke protection of FCA's retaliation provision); *United States ex rel. Wildhirt v. AARS Forever, Inc.*, 2011 U.S. Dist. LEXIS 37122, *17 (N.D. Ill. 2011) ("simply informing an employer that certain actions were 'illegal,' 'improper,' or 'fraudulent,' without any explicit mention of the possibility that the employee

15

would sue, does not suffice"). Accordingly, because the Second Amended Complaint is devoid of any allegations that Defendants had notice that Relator Herron was acting in furtherance of bringing a *qui tam* action, his retaliation claims cannot survive as pled.

Should Relator Herron wish to amend his retaliation claims to include the necessary allegations – of course, subject to Rule 11 – he must move the Court to do so and demonstrate good cause for the Court to allow such an amendment. *See* Fed. R. Civ. P. 15(a) ("A party may amend its pleading once as a matter of course within…21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b)…, whichever is earlier….In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave"). Rule 15(a) "force[s] the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion. A responsive amendment may avoid the need to decide the motion or reduce the number of issues to be decided, and will expedite determination of issues that otherwise might be raised seriatim. It also should advance other pretrial proceedings….The responsive pleading may point out issues that the original pleader had not considered and persuade the pleader that amendment is wise." Notes of Advisory Committee on 2009 amendments to Fed. R. Civ. P. 15. Because Relator Herron chose not to amend his retaliation claim to address the issues raised in Defendants' Motions to Dismiss,[10] he must now seek the Court's permission to do so.

---

[10] Defendants also raised this issue in their first Motion to Dismiss, filed in June 2012. [Dkt. 108 at 13-14.] The Relators filed the Second Amended Complaint in response to the first Motion to Dismiss, but Relator Herron did not amend his retaliation claims to address the issue.

## IV.
### CONCLUSION

For the foregoing reasons, the Motions to Dismiss, [dkts. 148; 149; and 152], are **DENIED** to the extent that the Court finds the Relators have alleged their claims with sufficient particularity under Fed. R. Civ. P. 9(b), but **GRANTED** to the extent that the Defendants associated with each alleged scheme are now limited to the Relators' characterization in their response brief, [dkt. 155 at 16-17]. Additionally, the Motion to Dismiss filed by Drs. Sasso and Renkens, [dkt. 148], is **GRANTED in part** as to the Relators' Indiana FCA claims (Counts IV, V, VI, and VIII) and the FCA retaliation claim (Count VII). Those claims are **DISMISSED** with prejudice as against Drs. Sasso and Renkens. The Motions to Dismiss filed by the remaining Defendants, [dkts. 149; 152], are also **GRANTED** as to Relator Herron's FCA and Indiana FCA retaliation claims (Counts VII and VIII), and those claims are **DISMISSED** and may only be reasserted by amendment with leave of Court. Additionally, the remaining Defendants' Motions to Dismiss, [dkts. 149; 152], are **GRANTED** to the extent that the Relators' Indiana FCA claims are limited to claims submitted after the Indiana FCA's enactment, and the Relators' FCA claims are limited to claims submitted after December 14, 2000. In all other respects, the Motions to Dismiss, [dkts. 148; 149; and 152], are **DENIED**. Defendants shall answer the Second Amended Complaint as it has been construed by the Court in this Order within twenty-one (21) days.

The Court requests that the Magistrate Judge hold a conference with the parties as soon as practicable, to establish a Case Management Plan and schedule for bringing the case to a conclusion.

02/21/2013

_____<br>
Hon. Jane Magnus-Stinson, Judge<br>
United States District Court<br>
Southern District of Indiana

**Distribution via ECF only:**

Jill Z. Julian
jill.julian@usdoj.gov

Mary Jane Lapointe
maryj@lapointelawfirm.com

Shelese M. Woods
shelese.woods@usdoj.gov

Roberta B. Hirsch
roberta.hirsch@atg.in.gov

Anand Swaminathan
anand@loevy.com

Michael Kanovitz
mike@loevy.com

Bryan S. Strawbridge
bstrawbridge@kdlegal.com

Marc T. Quigley
mquigley@kdlegal.com

Mark W. Bina
mbina@kdlegal.com

Randall R. Fearnow
rfearnow@kdlegal.com

Matthew B. Barr
mbarr@btlaw.com

Robert D. MacGill
rmacgill@btlaw.com

Brianna J. Schroeder
bschroeder@psrb.com

Frederick D. Emhardt
emhardt@psrb.com